JUSTICE GRAY,
concurring in part and dissenting in part.
I concur in the Court’s opinion on issue one. I respectfully dissent from that opinion, however, on issue two. It is my view that the District Court erred in reversing the PSC’s determination that Grouse Mountain’s transport of its guests to the Big Mountain and downtown Whitefish was motor carriage subject to PSC regulation. I would reverse the District Court on that issue and reinstate the PSC’s decision.
It is important to recognize that the PSC’s original determination — and its order on reconsideration — were based on the facts as Grouse Mountain set them forth in its petition for declaratory ruling. Central among those facts were that, in Grouse Mountain’s own words, Grouse Mountain “operates a hotel in Whitefish, Montana” and that its “primary business is providing lodging, food and beverages to paying guests.” Thus, the PSC proceeding did not center on *75 Grouse Mountain as a provider of recreational activities in the greater Flathead area. That notion was first raised after the PSC issued its declaratory ruling when, in its motion for reconsideration, Grouse Mountain posited that it was, in actuality, a provider of recreational activities; in other words, Grouse Mountain sought to change the entire basis of the proceeding after the fact by changing its description of its primary business. The PSC recognized that the existence of recreational activities in the area was important to Grouse Mountain’s business, but declined to change the nature of Grouse Mountain’s primary business. It noted that, as a business, Grouse Mountain owns and operates facilities to provide lodging, meal and beverage service; conversely, Grouse Mountain does not, as a business, own or operate facilities which provide recreational activities in the greater Flathead area.
In ruling on Grouse Mountain’s petition for judicial review, the District Court accepted Grouse Mountain’s expansive new characterization of its business, thus permitting Grouse Mountain to “change the rules after the game.” This Court follows suit, and in doing so permits Grouse Mountain to effectively amend its petition for declaratory ruling after the PSC had rendered its decision. I would join the PSC in rejecting this ploy by Grouse Mountain and confine our review to whether the transport of guests to the Big Mountain and downtown Whitefish by Grouse Mountain, whose primary business is that of hotel, meal and beverage service, subjects Grouse Mountain to regulation as a motor carrier under applicable regulations, statutes and case law.
Applying the PSC’s recently adopted regulations regarding the “principal business” test to Grouse Mountain as a hotel business, I would conclude — as did the PSC — that Grouse Mountain did not bring itself within those regulations so as to avoid falling within the statutory definition of a “motor carrier” contained in § 69-12-101, MCA. In determining whether Grouse Mountain’s transporting of guests to the Big Mountain and downtown Whitefish is incidental to its principal hotel business under § 38.3.1001, ARM, the pivotal questions are whether that transportation is “in furtherance of, in the scope of, and subordinate to” the principal business. (Emphasis added.) The use of the conjunctive “and” indicates that all three of the specified criteria must be met.
Here, it is undisputed that the transportation at issue is “in the furtherance of’ the principal business, as defined in § 38.3.1002(l)(b), ARM; it directly benefits Grouse Mountain’s hotel business by trans *76 porting customers and clients in order to “assist the principal business in achieving its economic purpose or objective.” It is my view, however, that Grouse Mountain’s transportation services to the Big Mountain and downtown Whitefish are not “in the scope of’ its principal business. “ ‘In the scope of’ means directly within the bounds of the economic purpose or objective of the business. It does not include a transportation activity that is merely a tangent or appendage.” Section 38.3.1002(l)(c), ARM. The economic purpose or objective of Grouse Mountain’s business is to provide rooms, meals and beverages at a profit. Ferrying guests to locations some distance away from the hotel facility simply does not come directly within that economic purpose or objective; indeed, given the proclivity of people on vacation to purchase meals and beverages at whatever location they find themselves, the transportation Grouse Mountain provides easily could be said to be directly adverse to its economic objective. In any event, it is — at best — “a tangent or appendage” to the principal business. Thus, Grouse Mountain does not satisfy the “in the scope of’ criterion and, as a result, it is not excluded from regulation by the PSC under § 38.3.1001, ARM.
It is also my view that Grouse Mountain’s transportation activities do not meet our Gamble-Robinson test or any statutory exclusion or exemption from the definition of “motor carrier” contained in § 69-12-101, MCA. Since the Court mentions these other authorities, but does not apply them, I will refrain from belaboring the point by setting forth the analysis under each which would properly result in a conclusion that Grouse Mountain’s transportation activities relating to the Big Mountain and downtown Whitefish are subject to regulation by the PSC.
I recognize that the kinds of transportation services Grouse Mountain provides are probably being provided by many other hotel businesses. I also recognize that some might question the propriety of laws and regulations governing such transportation activities in today’s society. However, the wisdom of those laws and regulations is not the issue before us in this case; the issue is whether Grouse Mountain’s transportation of guests to the Big Mountain and downtown Whitefish renders it a “motor carrier” pursuant to applicable statutes and regulations. I conclude that it does and, therefore, I would reverse the District Court on this issue.